IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION | ) ) ) | |
| This Document Relates To: | ) ) | MDL No. 2591 |
| *Crumley Roberts, LLP and Burke Harvey, LLC v. Henninger Garrison Davis, LLC, No. 21-2261-JWL* | ) ) ) ) ) | Case No. 2:21-cv-02261-JWL-JPO |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

NOW COME Plaintiffs, Crumley Roberts, LLC (sometimes referred to as "CR") and Burke Harvey, LLC (sometimes referred to as "BH") (also collectively referred to as "Plaintiffs"), by counsel, and for their Response in Opposition to Defendant's Amended Motion to Dismiss and Incorporated Memorandum of Law (the "Motion") [Dkt. 29], state as follows:

**I.  BACKGROUND FACTS**

The parties are law firms which participated in the Syngenta litigation which was ultimately settled in this Court. The parties had an agreement that they would work together and equally divide all fees earned by them in connection with the underlying case.

The ultimate settlement set aside a sum for attorneys' fees. That sum, in turn, was divided into sums for common benefit work and for IRPA work, among others. The common benefit portion was allocated to three courts and then, by each of those courts, to groups of firms.

Defendant Henninger Garrison Davis, LLC ("HGD") filed a 35 page common benefit fee petition, initially assigned to and allocated by the Southern District of Illinois, on behalf of ten law firms, collectively referred to in the application as "Team HGD." Team HGD included the Plaintiffs and several other law firms. Team HGD was awarded approximately $30 million for

1

common benefit work during the Syngenta litigation. Some of that amount has been distributed to HGD on behalf of Team HGD. Other parts of that amount appear to remain undistributed by the Court.

HGD has not distributed any part of the award to either Plaintiff. By this suit, Plaintiffs seek a judgment against HGD for the amounts they are owed pursuant to the agreement of the parties. The agreement between the parties was to split the total award into three equal parts.

The Complaint pleads five counts: contract, partnership (joint venture), implied contract, equitable estoppel and promissory estoppel. Defendant has filed a Fed. R. Civ. P. 12(b)(6) motion directed to all five counts. The motion argues that: the contract count does not state a claim because the agreement was not as Plaintiffs have alleged it to be; that the complaint is barred by the Statute of Frauds; that there was no partnership/joint venture; that there was no misrepresentation to support equitable estoppel, and; that enforcing the agreement of the parties would be inequitable. As is evident by the argument below, none of Defendant's claims have merit and the Motion must be denied.

**II.    ARGUMENT**

**A. Applicable Procedural Law.**

The Motion is made under Fed. Rule Civ. P. 12(b) (6). As stated by Wright & Miller:

> A proposition that is at the heart of the application of the Rule 12(b)(6) motion, and one that is of universal acceptance…is that for purposes of the motion to dismiss, (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader***All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists.

§ 1357 *Motions to Dismiss—Practice Under Rule 12(b)(6)*, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.).

In addition, "[a] 12(b)(6) motion is not the place to resolve factual disputes. It only tests the legal sufficiency of the complaint, assuming that all of the facts alleged therein are true." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir., 2017).

### B. The Contract Claim.

As to the contract claim, Defendant alleges (in a motion, not a pleading) that the facts of the parties' agreement are not true as alleged by Plaintiff. Specifically, even though the Complaint alleges an agreement to split all fees, Defendant claims that the actual agreement between the parties was to split only some fees - the IRPA portion but not the common benefit portion. This argument has no place in a Fed. R. Civ. P. 12(b)(6) motion and should be rejected by the Court out of hand.

Defendant's argument seems to be that Plaintiffs contributed to the joint effort by finding and signing-up clients, whereas Defendant's contribution was doing legal work, a dichotomy familiar to any attorney who has practiced in a law firm. Defendants contend they expected fees would be awarded on the basis of amounts recovered for clients and that they did not "contemplate" that fees might be awarded on the basis of hours worked. (Motion, p. 6). While Defendant would have apparently been happy to share fees equally when doing so was to its benefit (that is, if the fees came from the contributions of its partners, the Plaintiffs), it does not want to share fees if doing so would be to its detriment.[1]

The Complaint unmistakably alleges that the parties agreed to share all fees from the Syngenta litigation. The Complaint states, in pertinent part:

a. At paragraph 7: "the three firms agreed to split all legal fees received from their collective efforts equally, one-third each;"

---

[1] Of course, Defendant acquired its leadership role because, in part, because of the number of clients represented by Team HGD, including Plaintiffs. Also, Defendant kept Plaintiffs from generating more billable hours by assuring them that the agreement would be honored. *See* Complaint, p. 14. However, this is irrelevant because the agreement was to split any award equally, not based upon contribution or effort.

b. At paragraph 9: "…agreement to split all of the Syngenta legal fees by thirds with one-third of such fees going to each firm after any referral or other firms were paid;"

c. At paragraph 10: "As set forth above, the fee agreement in the Syngenta Case, was to split the total legal fees, after first deducting any referral fees to firms other than the Plaintiffs and Defendant, one-third to each of the three firms;"

d. At paragraph 11: "The understanding that CR, BH, and HGD would jointly work the project and each have one-third interest never changed, was reaffirmed several times, and was never modified;"

e. At paragraph 16: "…they would share equally one-third to each firm from all Syngenta fee awards to the Team;

f. At paragraph 28: "…the understanding that [Plaintiffs] would each receive one-third of the total fee."

In the Motion the Defendant baldly states, "…the agreement [between the parties] does not contemplate common benefit fees…." (Motion, p. 6). No explanation is given for this conclusion. To the contrary, however, the plain and ordinary meaning of "all fees" or "the total fee" would necessarily and logically includes all fees.

The Motion then states, "[t]he Complaint further alleges that the nature of the overall litigation changed…." (Motion, p. 7). There is no such allegation within the Complaint. The reference in the Motion is apparently to paragraph 16 of the Complaint, which states:

> On or about April 10, 2018 Syngenta reached a preliminary, global settlement of the underlying litigation which was finalized by order dated May 6, 2018. This settlement included an overall amount to be paid as attorneys' fees, which amount then needed to be allocated among the different cases and different firms in each case. Throughout the settlement and fee award process, CR and BH had no reason to believe that the original fee agreement with HGD had changed, and it was CR's and BH's expectations that they would share equally one-third to each firm from all Syngenta fee awards to the Team.

Defendant later states that the agreement (which Defendant now admits at page 8 of the Motion, "may have [been] adequately alleged" by Plaintiffs) "…contemplated settlements made to (sic) each individual client and fees derived from such client settlements…." (Motion, p. 8).

4

Essentially, Defendant argues that when it agreed to split "all fees" it really meant (or had the secret intention) to include only fees based on agreements with clients and not fees awarded by the Court. The basis for this claim is unstated and unsubstantiated.

The Complaint unquestionably states a contract claim as a matter of law. It alleges that the parties agreed to split all fees and seeks an order that all fees be split. Defendant tries to argue that the intention of the parties was that only certain fees were to be split. That argument is improperly placed in the Motion; rather, such an argument is properly raised in an answer. It cannot be raised in a Fed. R. Civ. P. 12(b)(6) motion in which Plaintiff's allegations must be taken as true. The major premise of the Motion -- that factual disagreement can be addressed in a Rule 12(b)(6) motion -- is simply wrong.

Defendant's further attempts to argue from *Bell Atlantic v Twombly*, 550 U.S. 544 (2007) and *Ashcroft v Iqbal*, 556 U.S. 662 (2009) on pages 6-8 of the Motion have no substance. Defendant does not quibble with the level of detail in the Complaint and it makes no argument that the agreement pleaded by Plaintiffs is not plausible. In fact, lawyers regularly make similar agreements to split fees.

In short, Defendant argues that the parties agreed to something, specifically splitting only some or certain fees, which is different from what is alleged in the Complaint, which is splitting all fees. Such an argument does not belong in a motion brought pursuant to Fed. R. Civ. P. 12(b)(6).

### C. The Statute of Frauds Defense.

Defendant assumes that the applicable statute of frauds is that of the State of Illinois. Plaintiffs accept that assumption for the purpose of deciding the Motion. The interpretation of the argued portion of the Statute of Frauds is fairly uniform in any event.[2]

Defendant's argument is that, as of the time the promise was made, the parties should have known and expected that that case would probably take more than a year to resolve (that is, get to the point of fees being payable and, hence, capable of being divided) and that, therefore, enforcement of the promise is barred by the Statute of Frauds. The Illinois Statute of Frauds, 740 ILCS 80/1, speaks of a promise "… that is not to be performed within …one year from the making thereof…." The case law makes it clear, however, that "…not to be performed within a year" means "absolutely incapable of being performed within a year" and not that it be "unlikely to be performed within a year."

Williston on Contracts states that

> It is well settled [Williston cites pages of cases from all over the country] that the oral contracts made unenforceable by the statute because they are not to be performed within a year include only those which *cannot* be performed within that period. A promise which is not likely to be performed within a year, and which in fact is not performed within a year, is not within the statute if at the time the contract is made there is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year.
>
> § 24:3. Promise that could be performed in one year, 9 *Williston on Contracts* § 24:3 (4th ed.), emphasis original, footnotes omitted.

The Restatement of Contracts is similar, stating in pertinent part, that: "[w]here any promise in a contract *cannot* be fully performed within a year from the time the contract is made, all promises

---

[2] *See, e.g., Edwards and Associates, Inc. v. Black and Veatch, LLP*, 84 F.Supp.2d 1182, 1201 (D. Kan., 2000).

in the contract are within the Statute of Frauds." Restatement (Second) of Contracts, § 130 (1981) (*emphasis added*).

Indeed, Illinois law is no different. In *Stein v Malden Mills, Inc.*, 9 Ill. App. 3d 266 (5th Dist., 1972), a salesman had an oral agreement to receive commissions on re-orders even after his employment ended. The parties used a three-year cut-off (starting after the salesman's employment ended) to measure the claimed damages. The court found the Statute of Frauds did not bar the suit:

> Defendant next contends that the contract is violative of the Statute of Frauds. Specifically he contends that since the commissions could be forthcoming forever or at least for three years, the contract is unenforceable because it was not reduced to writing. However, if it appears from a reasonable interpretation of the terms of the agreement that it is capable of performance within a year, the statute does not apply. [*citations omitted*] [T]his portion of the statute has been interpreted to render a contract unenforceable **only** if it is **impossible** of performance within one year. This reasoning removes the agreement in the instant case from the operation of the statute. Although the agreement called for the payment of commissions as long as the customer reordered the same style number of fabric and those reorders could come in forever, it is just as possible that the reorders could cease before the expiration of one year. Also plaintiff could have died before one year had passed from the time the agreement was made thus obviating the payment of reorder commissions. The fact that performance went on for more than one year is unavailing to defendant because it was long ago stated in *Mutual Life Ins. Co. of New York v. Ritsher*, (1915), 196 Ill.App. 27, 31:
>
> (T)he test to determine whether such agreement comes within the statute is not whether it was performed within a year, but whether, when the agreement was made, it **could** have been performed within a year; and if so, it does not come within the statute.
> Thus, we hold that the Statute of Frauds has no application to the case at bar.

*Stein v. Malden Mills, Inc.*, 9 Ill. App. 3d 266, 271–72 (5th Dist., 1972), (*emphasis added*).[3] *See also, Barnes v Michalski*, 399 Ill.App.3d 254 (4th Dist., 2010) in which plaintiff had loaned defendant $27,000.00. Plaintiff knew that it would take defendant more than a year to repay the

---

[3] Interestingly, Defendant cites the *Malden Mills* case at the top of page 13 of its Motion. Perhaps the citation, accompanied by "Cf," was to be compliant with R.P.C. 3.3(a)(2), which requires Defendant to disclose adverse controlling authority to the Court.

loan. The Illinois Appellate Court nonetheless held the Statute of Frauds not to bar a suit on the loan:

> The alleged contract required defendant to repay plaintiff, and, strictly from the standpoint of possibility, she could have repaid him immediately. *** Therefore, it was theoretically possible for her to perform the alleged contract within a year. "[I]f the contract is one of indefinite duration[ ] but performance within a year is possible by its terms, the contract is not within the statute, no matter how unlikely it is that it will actually be performed within a year." E. Farnsworth, Contracts § 6.4, at 132 (3d ed. 2004). The test is whether the contract was capable of being performed within one year after its formation, not whether the parties contemplated that it would be performed within that time. *Robinson,* 367 Ill.App.3d at 370, 305 Ill.Dec. 175, 854 N.E.2d at 772.

<u>Barnes v. Michalski</u>, 399 Ill. App. 3d 254, 271, 925 N.E.2d 323, 338–39 (2010).

The Complaint alleges that the three firms agreed to work together on the Syngenta cases and to pool and equally divide their net (of referral) fees. The Complaint says nothing about how long the Syngenta cases would last. Similarly, the parties' agreement did not rely upon such a prediction. As the Court well knows, some cases settle quickly and some are protracted for years. At any point it was certainly *possible* that the cases would end within a year of the promise being made or reaffirmed by the parties.

The Defendant next argues that the Complaint's two estoppel counts (promissory estoppel and equitable equitable) were inserted to avoid the statute of frauds. They most certainly were not. The estoppel counts are substantive and the promissory estoppel count is not challenged by the present Motion. As argued above, because the Statute of Frauds is not applicable, there is little to say about Defentant's argument, except to note that: (1) Defendant's first case, *Brown v St. Xavier University,* 2015 IL App (1st District) 142824-U, is non-precedential; (2) Defendant ignores several Seventh Circuit cases expressing doubt as to whether the Illinois Supreme Court would not find that estoppel overcomes the statute of frauds. *See, e.g.*, *Goldstick v. ICM Realty*, 788 F.2d 456, 464-6 (7th Cir., 1986), and; (3) Contrary to its own arguments, Defendant itself, on page 19

of the Motion, quotes the Illinois Appellate Court as saying that equitable estoppel will "trump the statute of frauds…."

**D. The Partnership Claims.**

A partnership is formed by two or more persons carrying on a business for profit. Unlike a corporation or an LLC, no charter from the state is needed, nor is any available. This is the case in every state.

Illinois has adopted the [Revised] Uniform Partnership Act (1997), 805 ILCS 206/100 *et seq*. Section 202 of the Act states that, with certain inapplicable exceptions, "the association of 2 or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Official comment 1 to Section 202 makes it clear that a partnership is formed even if the "expressed subjective intention" of the parties was to not form a partnership. The question, therefore, is whether the parties associated themselves to carry on the business of prosecuting the Syngenta cases as co-owners, as the association was clearly for - profit.

The Illinois Appellate Court has explained

> [a] joint venture is an association of two or more persons to carry on a single enterprise for profit. Partnership legal principles govern joint ventures and the only distinction of consequence between the two is that a joint venture relates to a single enterprise or transaction, while a partnership relates to a general business of a particular kind.

*Herst v. Chark*, 219 Ill. App. 3d 690, 694, 579 N.E.2d 990, 992 (1991) (*citations omitted*)

As explained at 138 A.L.R. 968:

> The law requires little formality in the creation of a joint adventure, and in considering whether or not such a relationship has been created, the courts are guided not only by the spoken or written words of the parties, but also by their acts; and where from the facts there is no question but that the parties intended to go into the deal together so that each might derive profit therefrom, the fact that there is no definite agreement … does not prevent the parties from having assumed the relationship of joint adventurers.

The Illinois Supreme Court, in <u>Ditis v.Ahlvin Const. Co.</u>, 408 Ill.416, 425-6 (1951), also explained that:

> [a] joint adventure may be established without any specific formal agreement to enter into a joint enterprise; it may be implied or proved by facts and circumstances showing such an enterprise was in fact entered into. It is the nature of the enterprise undertaken that controls, not the form of the agreement. If a joint enterprise be proved either by direct evidence of a mutual agreement, or by proof of facts and circumstances from which it is made to appear that such enterprise was entered into, the law fixes the rights of the parties. *(citations omitted)*

*See also*, <u>Ambuul v. Swanson</u>, 162Ill.App.3d 1065, 1968 (1st. Dist. 1987):

> [a]t issue in this appeal is whether a joint venture was created by the parties. The existence of a joint venture may be inferred from facts and circumstances showing such an enterprise was in fact entered into and the intent of the parties is the most significant element. In general, the following elements are determinative of such an intent: (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint venturers; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or knowledge by each joint venturer; (4) some degree of joint proprietorship or mutual right to exercise control over the enterprise; and (5) provision for the joint sharing of profits and losses. (*citations omitted*)

The Complaint clearly alleges formation of a partnership under the laws of any possible state. Once the parties decided to focus their business efforts on Illinois, that State's law became applicable to the relations between them pursuant to 805 ILCS 206/106.[4] Regardless, Defendant makes its argument upon the assumption that Illinois law controls. Moreover, as alleged in the Complaint, the parties agreed to share not only revenues (fees) but also expenses. Thus, they agreed to share the profits (revenues less expenses) from their venture. Section 202(c)(3) of the Illinois Revised Uniform Partnership Act thereby creates a presumption of partnership.

Defendant argues that there cannot be a partnership without partnership tax returns, a partnership bank account and a certificate for doing business under an assumed name. Absolutely

---

[4] Unlike corporations, partnerships do not depend upon a charter from the state or registration with the Secretary of State. The relation is created by the parties without any state action.

no support exists for such a contention, even apart from the obvious fact that Defendant repudiated the partnership as soon as it had any revenue to report or deposit. For example, Defendant purports to summarize *Autotech Tech, L.P. v Automationdirect.com*, 471 F.3d 745 (7th Cir., 2006) as holding "no partnership in face of marketing agreement where no joint tax returns filed." (Motion, p. 17). However, the case actually holds that:

> To establish a joint venture, the plaintiff must prove (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint ventures; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or knowledge; (4) a degree of joint proprietorship or mutual right to the exercise of control over the enterprise; and (5) a provision for joint sharing of profits and losses (citing *Trustmark Ins. Co. v. Gen. & Cologne Life Re of America,* 424 F.3d 542, 547 (7th Cir.2005)).
>
> ***
>
> Autotech failed to offer any evidence showing a partnership or joint venture. In fact, the evidence indicated the opposite: the contract expressly prohibited joint control; there was no provision for profit sharing and loss; the parties did not file joint tax returns; and there was no evidence of an intent to be associated as a partnership or joint venture. The district court correctly determined that there was no partnership or joint venture to support a fiduciary relationship.

<u>Autotech Tech. Ltd. P'ship v. Automationdirect.com</u>, 471 F.3d 745, 748-9 (7th Cir. 2006).

Using the *Autotech* factors[5], the Complaint at bar alleges: (1) an agreement; (2) publication of a brochure which objectively manifests an intent to be jointly associated; (3) that both parties made contributions, including effort and skill, and; (4) that both parties had control and (5) that by splitting fees and expenses, they necessarily agreed to share both profits and losses.

Importantly, the Illinois Supreme Court has held that an agreement between two otherwise independent lawyers to share fees on a particular case creates a joint venture.

> Although the precise issue has not been previously addressed by this court, it appears well accepted in other jurisdictions that where lawyers between whom no general partnership relation exists jointly undertake to represent a client in a case,

---

5     The enumeration of factors in *Ambul, supra*, is essentially the same.

11

they may be regarded as joint venturers, or 'special partners,' for the particular transaction"

*In re Johnson*, 133 Ill. 2d 516, 525, 552 N.E.2d 703, 707 (1989).

Furthermore, the issue here arises on federal pleadings. There is no requirement that a Plaintiff plead its evidence; rather, federal pleadings are based upon notice, not facts. That said, the determination of whether or not parties were in a partnership is fact-intensive and is not suited for a Fed. R. Civ. P. 12(b)(6) motion. The complaint pleads a partnership.

Finally, the last paragraph of Defendant's argument on partnership reflects a basic misunderstanding of the nature of a partnership. Partnership law governs the relationship between two or more parties based upon the factors stated above, regardless of what state's law ultimately applies. Most states have adopted the Uniform Partnership Act or the (similar) Revised Uniform Partnership Act. If the parties change states, they are still partners, but the law of the new state will control, which means little to the outcome of the Motion. For example, a marriage celebrated in one state is still a marriage (albeit governed by different laws), even if the parties move to another state. Plaintiffs and Defendant formed a partnership, not necessarily an Illinois partnership or a North Carolina partnership, but a partnership none-the-less. As such, Plaintiffs are entitled to their share of the partnership's income.

### E. The Estoppel Claims.

Defendant does not even mention, much less dispute, the promissory estoppel count (Count V) of the Complaint, other than to argue that it is subject to the inapplicable Statute of Frauds defense. That matter has been dealt with previously in this Response and need not be repeated here.

Count IV of the Complaint is the equitable estoppel count and, as to that Count, Defendant argues that: "…Plaintiffs have not alleged that [Defendant] misrepresented or concealed material

facts…." (Motion, p.19). Defendant does not support this claim and a simple reading of the Complaint itself shows it to be false: (1) paragraph 14 of the complaint contains Defendant's assurances to Plaintiffs that they "…would be compensated per the Agreement; " (2) paragraph 15 of the Complaint contains Defendant's assurances that the Agreement "was in full force and effect[and] that a written memorandum to this effect would be forthcoming," and; (3) paragraph 31 of the Complaint alleges that Defendant "…unambiguously reassured the Plaintiffs that the agreement would be honored, that the agreement would be reduced to writing, and that the Plaintiffs would be compensated fairly." Hence, Defendant's assertions that the Complaint is bereft of basic allegations supporting equitable estoppel is simply incorrect.

Finally, Defendant makes the preposterous argument that because Plaintiffs seek to enforce the agreement of the parties, they somehow cannot be acting in good faith. Defendant even goes so far as to suggest that giving one firm $30 million would be reasonable, but giving three firms, which worked together, $10 million each would be unreasonable. Defendant presents no support for such a conclusion, nor any reason why the agreement of the parties should not be enforced. These arguments are not supported policy arguments, they are merely buyer's remorse.

### III.   CONCLUSION

Defendant made a bargain which it now calls "draconian" and clearly regrets. (Motion, p. 9). That is not a reason to deprive Plaintiffs of the benefit of the bargain. Defendant will have an opportunity to present its factual claims in a pleading and its evidence at a trial. There is no shortcut to avoid Defendant's obligation to plead and prove its defenses, if any. The present Motion is not the appropriate vehicle for Defendant to proffer its so-called arguments, which only dispute the facts alleged to support the contract and are legally incorrect or insufficient as to the other matters alleged.

Defendant's Motion is legally and procedurally deficient and should be denied.

                                Respectfully Submitted,

By:    <u>/s/ Christian J. Jorgensen</u>
         Christian J. Jorgensen

         Christian J. Jorgensen
         Illinois Bar # 6243203
         Indiana Bar # 24032-45
         Dressler Peters LLC
         70 West Hubbard Street, Suite 200
         Chicago, Illinois 60654
         Phone: 312-602-7365
         Email: jorgensen@dresslerpeters.com

         Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 9, 2021 that the foregoing **Plaintiffs' Response in Opposition to Defendant's Amended Motion to Dismiss** was filed with the Clerk of the Court using the Court's CM/ECF system which sent electronic notification to the parties participating in the Court's ECF system on August 9, 2021, as follows:

John Baricevic
Chatham & Baricevic
107 W. Main Street
Belleville, IL 62220
Phone: 618-233-2200
Email: john@chathamlaw.org
    claire@chathamlaw.org

Attorneys for the Defendant

              By:  /s/ Rachel McCandless
                  Rachel McCandless
                  Paralegal
                  Dressler | Peters, LLC