IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: SYNGENTA AG MIR 162 | ) | MDL No. 2591 |
| CORN LITIGATION | ) | |
| | ) | Case No. 14-md-2591-JWL |
| This Document Relates To: | ) | |
| | ) | |
| *Crumley Roberts, LLP and* | ) | |
| *Burke Harvey, LLC v.* | ) | |
| *Henninger Garrison Davis LLC, et al.,* | ) | |
| No. 21-2261-JWL | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

This single case within this multi-district litigation (MDL) presently comes before the Court on defendant's motion for summary judgment (Doc. # 89) and plaintiffs' cross-motion for partial summary judgment (Doc. #96).  For the reasons set forth below, the Court **denies** both motions.

## I.    **Background**

In this suit, plaintiff law firms ("Crumley Roberts" and Burke Harvey") seek to recover from defendant law firm ("HGD") two thirds of an attorney fee award pursuant to an alleged oral agreement among the parties.  Specifically, plaintiffs allege that the parties agreed that they would work together to pursue litigation against Syngenta (the common defendant in the MDL) and that they would split "fees" equally among the three firms, one-third to each, after paying any referral fees.  The parties litigated individual actions against Syngenta on behalf of their clients, particularly in Illinois, but a global settlement of claims

against Syngenta was reached and was subsequently approved by this Court, and a settlement class was certified.

The Court then awarded total attorney fees from the settlement fund in the amount of $503,333,333.33 (one-third of the total settlement). The Court allocated those fees among four pools: Kansas (49%), Minnesota (23.5%), and Illinois (15.5%) common benefit pools, to be awarded for work that benefitted the entire settlement class; and an "IRPA" pool (12%), to be allocated among individually retained private attorneys *pro rata* based on the ultimate recoveries by their claimant clients. The parties to this action were assigned to the Illinois common benefit pool, and they (along with a few other firms) submitted a joint application (as "Team HGD") for an award of common benefit fees to the United States District Court for the Southern District of Illinois, to which the Court had assigned the initial task of allocating fees from the Illinois pool. Ultimately, a total of $29,140,257.14 was awarded to "Team HGD" and distributed to HGD, but HGD has not paid any portion of that award to plaintiffs.[1] Plaintiffs claim that HGD has breached the parties' oral agreement by failing to divide that common benefit award equally among the three firms. HGD contends that the parties' agreement does not apply to the award of common benefit fees.

In this action, plaintiffs assert claims for breach of contract; a claim of promissory estoppel; and a claim for dissolution, accounting, and distribution under the Illinois

---

[1] It appears that the parties divided their awards from the IRPA pool in accordance with their oral agreement to split fees equally, and those awards are not at issue in this case.

2

Uniform Partnership Act.[2]   By its present motion, defendant HGD seeks summary judgment on all of those claims against it.   By their cross-motion, plaintiffs seek summary judgment with respect to liability on their contract claim.

## II.   Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *See id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See Thom v. Bristol-*

---

[2] The Court previously dismissed plaintiffs' equitable estoppel claim.  Moreover, plaintiffs have amended their complaint to add HGD's owners as defendants and to add a claim seeking to set aside any distributions of the subject fee award by defendant firm to those owners pursuant to Ala. Code § 8-9B-5, a provision of the Alabama Uniform Voidable Transactions Act.  By its motion, HGD originally sought summary judgment also on that new claim.  The Court has since granted the parties' request to bifurcate and stay discovery on that claim, however, and HGD has thus withdrawn its motion for summary judgment as it relates to that claim.  In addition, the present motions do not implicate HGD's counterclaim for a declaratory judgment regarding the appropriate division of the fee award.

3

*Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *See id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof."  *See Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005).  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."  *See Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."  *See Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.   Failure to Submit the Agreement to the Illinois Court

The Court first addresses HGD's argument that plaintiffs may not enforce – and have waived the enforcement of – the alleged oral agreement to split fees because the agreement was not submitted to the special master appointed by the Illinois court to

recommend an allocation of the Illinois common benefit pool.  HGD relies on a section of

the special master's Report and Recommendation (R&R), in which he stated as follows:

> I have reviewed certain Fee Sharing Agreements, which I requested
> on January 14, 2019, and which were provided to me in my capacity as
> Special Master.  More specifically, [three firms] provided several Fee
> Sharing Agreements by and between these law firms.  I find the Fee Sharing
> Agreements entered into by these three law firms to be fair and reasonable
> based upon my analysis of each firm's common benefit contributions, and
> further note that I retain my duties to resolve any fee or expense disputes
> within the Clark/Phipps Group along with this Court.  *See* Settlm't Agmt. §
> 7; *see also* Order Appt'g Sp. Master (S.D. Ill. Dec. 3, 2018).

> No other firms supplied me with fee sharing agreements, presumably
> because none exist.  As a result, I do not address any other fee sharing
> agreements here, but again point out that I retain jurisdiction along with this
> Court to resolve any such disputes should they arise.  *Id.*  Also, I shall remain
> available to work to resolve any disputes arising within the various SDIL
> groups as to their respective division of their allocations.

HGD notes in particular the statements that the special master had requested fee sharing

agreements and that he had received only certain agreements (meaning that plaintiff's

alleged oral agreement had not been submitted to him).  HGD has not provided this Court

with the special master's actual request, however, and thus the exact scope of that request

(for instance, whether he requested all agreements or only written ones) remains unknown.

In addition, plaintiffs have submitted evidence that they never received any such request

from the special master, and HGD has not provided evidence that it forwarded any such

request to plaintiffs or otherwise controverted plaintiffs' evidence in any way.  Instead,

HGD argues that plaintiffs undisputedly reviewed the R&R but failed to take action (such

as objecting or submitting the alleged oral agreement) in response to the excerpt quoted

above.  HGD further notes that although the Illinois court refused to accept many of the

recommendations by the special master relating to the allocation of fees from that pool, the court did not disturb the master's finding that certain other fee sharing agreements were reasonable.

The Court cannot conclude, however, that plaintiffs were required to submit the alleged oral agreement to the special master or the Illinois court or that they otherwise knowingly waived the right to enforce the agreement.  First, although the Illinois court may have empowered the special master to request certain information and to resolve fee-sharing disputes, there is no indication that the court did – or had the power to – authorize the master to require all agreements to be submitted and approved or else be deemed waived.  Just as this Court previously lacked any basis to approve common benefit agreements among counsel, *see In re Syngenta AG MIR 162 Corn Litig.*, 2015 WL 2165341, at *8 (D. Kan. May 8, 2015) (Lungstrum, J.), there would be no basis for the Illinois court or special master to approve any agreement among counsel concerning an application for common benefit fees, at least until a dispute had arisen and been submitted for resolution.  Moreover, even if the special master had possessed that power, he did not state in the R&R that all fee sharing agreements had to be submitted or else they could not be enforced (and, again, the actual request from the special master has not been submitted). Indeed, the fact that Team HGD had submitted a joint application on behalf of multiple firms would have suggested that those joint applicants had agreed on a basis for dividing any resulting award, and the special master did not reject the application; to the contrary, the special master acknowledged that future disputes could yet arise among joint

6

applicants.  Nor did the Illinois court, in ruling on objections to the R&R, indicate that unsubmitted or unapproved fee sharing agreements could no longer be enforced. Accordingly, the Court will not reject plaintiffs' claims based on the alleged oral agreement on this basis argued by HGD.

### IV.     Illinois Rule of Professional Conduct 1.5(e)

HGD also argues that the alleged agreement to split fees is unenforceable because it violates Rule 1.5(e) of the Illinois Rules of Professional Conduct.  That rule provides that "[a] division of a fee between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer . . .; (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and (3) the total fee is reasonable." *See* Ill. R. Prof. Conduct 1.5(e). HGD argues that the alleged agreement violates the rule because the claimed division (equally, one-third to each party) is disproportionate to the services performed by each firm; and because, although joint clients of these firms were advised of and agreed to a fee split in their retainer agreements, other clients of HGD not also represented by plaintiffs did not agree to the claimed split, nor did clients of other firms who benefitted from the common benefit work for which Team HGD was awarded fees.

The Court agrees with plaintiffs, however, that this rule was not intended to apply to a division of common benefit fees such as those awarded in this case.[3]  The nature of the particular fees awarded here – fees for specific work performed on behalf of the entire settlement class – makes it impractical, if not impossible, for each benefitted class member to have approved in writing an agreed division of such fees.  That fact indicates that the rule was not intended to apply to such fees.  That position is further supported by the official comment to Illinois Rule 1.5(e), which states that "[a] division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm."  *See id.* cmt. [7]; *see also Ferris, Thompson, & Zweng, Ltd. v. Esposito*, 60 N.E.3d 160, 164-65 (Ill. Ct. App. 2016) (considering committee comments in interpreting Rule 1.5(e)).  There was no billing to any client covering these common benefit fees awarded to Team HGD; thus, under the plain language of the official comment, the rule does not apply to these fees.  HGD has not addressed this comment in its reply brief; nor has HGD cited any authority indicating that this rule does apply to fees of this type.  In light of the official comment and in the absence of authority applying the rule to fees of this type, the Court

---

[3]  Plaintiffs also wonder how, if no agreement to divide an award of common benefit fees could be enforced here, HGD would be entitled to receive any allocation from the award to Team HGD, in light of the fact that any joint application presupposes some agreement to split resulting fees on some basis.  In light of its conclusion that the rule does not apply here, the Court need not answer that question.

declines to apply the rule to prohibit the enforcement of any agreement to divide the fee award to Team HGD.[4]

## V.    Breach of Contract

### A.    *Choice of Law*

Before addressing the merits of plaintiffs' claim for breach of contract, the Court must determine which state's law governs the claim.  The parties previously agreed that Illinois law applied.  *See In re Syngenta AG MIR 162 Corn Litig. (Crumley Roberts, LLP v. Henninger Garrison Davis, LLC)* ("*Crumley Roberts*"), 2021 WL 4124647, at *2 n.3 (D. Kan. Sept. 9, 2021) (Lungstrum, J.).  Plaintiffs now argue that the law of North Carolina or Alabama should apply, for the reason that either of those states has a more significant relationship to the claim than Illinois does.  HGD argues that Illinois law applies, although both sides agree that there is no apparent conflict among the states' applicable contract law.

In an MDL such as this, the Court applies the choice of law rules of the state in which the particular action was originally filed, *see Johnson v. Continental Airlines Corp.*, 964 F.2d 1059, 1063 n.5 (10th Cir. 1992), and thus the parties agree that the Court should apply Illinois's choice of law rules in this case to determine which state's substantive law governs plaintiffs' contract claims.  Illinois has adopted the choice of law analysis of the Second Restatement of Conflict of Laws.  *See Townsend v. Sears, Roebuck and Co.*, 879

---

[4]    In light of this conclusion, the Court need not address the parties' arguments concerning whether these parties were subject to the requirements of the Illinois Rules of Professional Conduct.

N.E.2d 893, 903 (Ill. 2007).  Section 188 of the Restatement provides that a contract claim is governed by the law of the state with the most significant relationship to the transaction and the parties, with the following contacts to be taken into account, evaluated according to their relative importance with respect to the particular issue:  (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the place of business of the parties.  *See* Restatement (Second) of Conflict of Laws § 188; *see also Townsend*, 879 N.E.2d at 903 (presumptively applicable law is selected under Section 188 in contract cases); *Eclipse Mfg. Co. v. U.S. Compliance Co.*, 886 N.E.2d 349, 357-58 (Ill. Ct. App. 2007) (citing Section 188 factors as potentially relevant factors for choice of law with respect to a contract claim).

HGD argues that Illinois has the most significant relationship to the claim because the parties' work on cases against Syngenta was primarily conducted in relation to litigation filed in Illinois.  As plaintiffs note, however, the Section 188 factors generally do not weigh in favor of applying the law of Illinois, but rather favor applying the law of Alabama (where HGD and one plaintiff firm are located) or North Carolina (where the other plaintiff firm is located), as those states are where the parties negotiated and entered into their oral agreement to work together and split fees, where they performed work recruiting clients and litigating the cases, and where they presumably would have received and divided attorney fees.  Moreover, the dispute here concerns the division of common benefit fees

10

awarded to Team HGD, and that award was made by this Court in Kansas to the parties who had submitted a joint application from Alabama.

HGD is correct in noting that Illinois courts see the need for a choice-of-law determination "only when a difference in law will make a difference in the outcome." *See Townsend*, 879 N.E.2d at 898. The parties agree that the choice here does not make a difference in resolving the present motions, as the relevant states' law does not differ with respect to the general contract principles at issue. Accordingly, the Court need not finally decide the choice of law issue at this time. Nevertheless, because the factors in Section 188 of the Restatement weigh in favor of applying Alabama law, the Court will rely on that law in applying those principles here.

        *B.*    <u>*Analysis*</u>

As set forth in an uncontroverted statement of fact by HGD, the parties entered into an oral agreement in November 2014 in which they agreed "to work together on the case against Syngenta" and "to split fees equally, one-third each, after paying referral counsel." HGD seeks summary judgment on any claim based on this agreement, arguing as a matter of law that the agreement extended only to the division of contingent fees and that there was no mutual assent to an equal division of common benefit fees awarded to a party. Conversely, plaintiffs seek summary judgment with respect to HGD's liability for breach of contract, based on their argument that the agreement to split "fees" equally unambiguously includes all attorney fees received, of whatever type. The Court concludes

11

that this issue may not be decided as a matter of law at this stage, and it therefore denies both sides' motions for summary judgment as they relate to the contract claim.

HGD first notes the undisputed evidence that the parties did not discuss common benefit fees at all in negotiating and entering into the oral agreement, and it argues that any agreement to divide common benefit fees would be a sufficiently material term of the overall agreement to require explicit assent. The Court rejects HGD's argument based on a lack of mutual assent as a matter of law, however. In this case, there is no issue about whether the parties actually entered into any agreement, as HGD concedes that it orally agreed to split "fees" equally with plaintiffs. Moreover, there is also no evidence that the parties referred specifically to "contingent" fees (or some other specific type of fees) in negotiating and entering into the agreement to split "fees" equally. As alleged by plaintiffs, that agreement (as assented to by HGD) applied to all fees, of whatever type, and such an agreement would necessarily include an award of common benefit fees. HGD did assent to a division of fees; the issue is the scope of that agreement.

HGD argues that the agreement to split "fees" equally clearly and unambiguously applied only to contingent fees. That argument is easily disposed of, as the use of "fees" without any qualifying or modifying language suggests on its face that the agreement might extend beyond a single type of attorney fees. Moreover, contrary to HGD's argument, and as the Court previously stated, the fact that the parties contemplated filing only individual actions and thus did not contemplate a possible award of common benefit fees at that time does not necessarily mean that the parties could not plausibly have agreed to divide all fees

equally, however obtained. *See Crumley Roberts*, 2021 WL 4124647, at *2 n.3 (noting that "the possible assertion of class claims and the subsequent inclusion of their clients within a class could not reasonably have been dismissed by the parties as an impossibility," and that "if the parties did not believe that a class action was likely, [HGD] may not have seen the need to object to an agreement to divide all fees however obtained").

HGD also argues that other evidence makes clear that the parties intended the "fees" to include only contingent fees, but the Court disagrees that that evidence shows as a matter of law (with the evidence viewed in plaintiffs' favor) that HGD's interpretation was intended by the parties.[5]  For instance, HGD points to the contingent fees contracts with the parties' jointly-represented clients, which set forth a division only of contingent fees; but the fact that the parties agreed to an equal split of contingent fees does not necessarily mean that they did not agree to split all fees equally, including contingent fees.  HGD notes that subsequent writings mentioning the parties' oral agreement refer to the parties' "inventory" of cases; that reference does not necessarily mean that the parties were dividing only contingent fees, however, as they could also have been agreeing to split all fees ultimately awarded as an end result of the parties' litigation of their inventory of cases against Syngenta (including fees awarded for work that benefitted not only their own clients but also the entire settlement class).  HGD notes the reference in the oral agreement to the initial deduction of fees paid to referral counsel; but again, that reference does not

---

[5]  Interestingly, neither side has submitted direct evidence (for instance, in the form of sworn statements from those who entered into or negotiated the oral agreement) concerning the parties' intent with respect to the word "fees" as used in the oral agreement.

foreclose the possibility of an agreement to divide all types of fees, after the initial deduction of any referral fees due for any reason. HGD cites to one plaintiff's "disappointment" with the project at one stage, but that disappointment appears to have related to the anticipated limit on contingent fees, and the statement is too vague (when viewed in the light most favorable to plaintiff) to constitute an admission that the parties had not agreed to divide common benefit fees. The same holds true with respect to HGD's citation to a plaintiff's negative reaction to the Illinois R&R.

As noted, in considering HGD's request for summary judgment, the evidence must be viewed in the light most favorable to plaintiffs, and HGD's evidence does not show as a matter of law that the parties intended "fees" to include only contingent fees. Moreover, other evidence supports the existence of a question of fact here – not only does the use of the word "fees" in the agreement without limiting language weigh against HGD's interpretation, the fact that the parties submitted a joint application (when viewed in plaintiffs' favor) could suggest that the parties had agreed to divide any resulting award on some basis other than the relative common benefit hours included in the application, as the parties could simply have submitted separate applications if they were to be compensated only according to those hours. Therefore, the Court concludes that HGD is not entitled to judgment as a matter of law on this claim.

The Court then turns to plaintiffs' argument for summary judgment in their favor on the contract claim. The evidence cited by HGD, viewed in HGD's favor, creates a question of fact concerning the parties' intent with respect to their oral agreement.

Plaintiffs argue that no such evidence should be considered because the language of the agreement itself unambiguously includes all "fees".  The Court does not agree, however, that that determination should be made at this stage.  "The language of a contract . . . must be interpreted in light of all of the surrounding circumstances."  *See Walls v. Bank of Prattville*, 575 So. 2d 1081, 1083 (Ala. 1991) (considering all evidence to determine whether a contract provision contained ambiguity).  The Court concludes that any decision concerning ambiguity should be based on the totality of the circumstances surrounding the making of the oral agreement, including those relating to the parties' simultaneous agreement to work together to pursue litigation against Syngenta, and thus the Court will await the presentation of evidence at trial.  The Court therefore denies plaintiffs' motion for summary judgment.

## VI.    Partnership Claim

Finally, HGD seeks summary judgment on plaintiffs' claim for dissolution, accounting, and distribution under the Illinois Uniform Partnership Act.  HGD argues that plaintiffs cannot show the existence of a partnership under Illinois law as a matter of law.

As an initial matter, plaintiffs suggest that the Illinois partnership statute may not apply here.  They note that the alleged partnership was formed before the parties had any contact with Illinois, and they cite the statutory provision that relations between partners are governed by the law of the jurisdiction in which the partnership had its chief executive office.  *See* 805 Ill. Comp. Stat. 206/106(a).  Plaintiffs brought this partnership claim

15

specifically under the Illinois Act, however, and they have not sought leave to amend to assert a claim under any other statute; the Court thus addressed the claim as pleaded. Moreover, HGD has not sought judgment on this claim on the basis that the Illinois Act does not apply.  Accordingly, the Court does not consider at this time the issue of the applicability of the statute.

Under the Illinois statute, "the association of 2 or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intended to form a partnership." *See* 805 Ill. Comp. Stat. 206/202(a).  "The requisites of a partnership are that the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or services, and having a community of interest in the profits."  *See Argianas v. Chestler*, 631 N.E.2d 1359, 1369 (Ill. Ct. App. 1994) (citation and internal quotation omitted).  "In determining the existence of a partnership, the following factors are material: the manner the parties have dealt with each other; the mode in which each has, with the knowledge of the other, dealt with persons in a partnership capacity; whether the alleged partnership has advertised using the firm name; and whether the alleged partners shared the profits."  *See id.* (citation omitted).  "Whether a partnership exists is a question to be determined by the fact finder from all the facts and circumstances presented."  *See id.* (citation omitted).

HGD relies on a statement in *Seidmon v. Harris*, 526 N.E.2d 543 (Ill Ct. App. 1988), that "where the evidence contains writings of the parties that distinctly indicate a relationship other than a partnership, the assertion that a partnership exists must be based

on very clear and convincing evidence." *See id.* at 546.  HGD notes that in marketing materials, the parties described themselves as "independent cooperating law firms," a characterization deemed accurate in testimony by the Crumley Roberts attorney involved in making the agreement among the parties on behalf of his firm.  In arguing that the undisputed facts show that the parties did not form a partnership as a matter of law, HGD also cites the fact that the parties operated as separate law firms and the absence of any partnership agreement, tax returns, accounts, financial statements, or name.  *See In re Kime's Estate*, 356 N.E.2d 350, 353 (Ill. Ct. App. 1976) (although the absence of a partnership account, tax return, or written articles "individually would not be conclusive of the absence of a partnership, they may collectively be strong evidence that there was in fact no partnership").

In response, plaintiffs rely on the principle that the existence of partnership ordinarily presents a question of fact for trial, and they cite evidence supporting the following allegations:  the parties agreed to work together to pursue the litigation against Syngenta and to divide net fees equally; each party could sign up clients to be jointly represented by the parties; all parties incurred expenses to perform the joint business of pursuing the litigation; the three attorneys who negotiated and entered into the agreement to work together referred to the firms as "partners"; and the parties submitted the joint application (with other firms) for common benefit fees as "Team HGD."  Although these facts are not overwhelming in establishing the existence of a partnership – as opposed to a mere contractual arrangement between separate law firms – the Court does agree that at

least some evidence supports the partnership claim.  Because the evidence must be viewed at this stage in the light most favorable to plaintiffs, the Court concludes that a question of fact remains for trial concerning the existence of a partnership, and the Court therefore denies HGD's motion for summary judgment on the partnership claim.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 89) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiffs' cross-motion for partial summary judgment (Doc. #96) is hereby **denied**.

IT IS SO ORDERED.

Dated this 6th day of April, 2023, in Kansas City, Kansas.

 ___/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge