IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR 162 CORN LITIGATION | MDL No. 2591 |
| | Case No. 14-md-2591-JWL |
| This Document Relates To: | |
| *Crumley Roberts, LLP and Burke Harvey, LLC v. Heninger Garrison Davis LLC, et al.*, No. 21-2261-JWL | |

## MEMORANDUM AND ORDER

This single case within this multi-district litigation (MDL) was tried to the Court from November 6 to November 8, 2023, and the Court issued its findings of fact and conclusions of law by Memorandum and Order of December 8, 2023. *See In re Syngenta AG MIR 162 Corn Litig. ("Crumley Roberts")*, 2023 WL 8529139 (D. Kan Dec. 8, 2023) (Lungstrum, J.). The Court found against plaintiff law firms Crumley Roberts, LLP ("CR") and Burke Harvey, LLC ("BH") on their affirmative contract and partnership claims against defendant law firm Heninger Garrison Davis LLC ("HGD"), by which plaintiffs sought to recover two-thirds of a common-benefit attorney fee award distributed to HGD. *See id.* at *2-12. On HGD's counterclaim for a declaratory judgment, the Court concluded that CR and BH should receive $1,300,000 and $200,000 from the fee award respectively. Judgment was entered accordingly on December 8, 2023.

This matter presently comes before the Court on plaintiffs' motion to alter or amend the judgment (Doc. # 136). For the reasons set forth below, the motion is **denied in part**

**and remains pending in part**.  The motion is denied with respect to plaintiffs' request that the Court change its determination on the counterclaim of the amounts plaintiffs should receive from the subject fee award.  The motion remains pending with respect to the issue of prejudgment interest, and supplemental briefs are requested by the Court as set forth below.

I. **Challenge to the Court's Counterclaim Determination**

Plaintiffs bring this motion pursuant to Fed. R. Civ. P. 59.  Rule 59(e) provides for a motion to alter or amend a judgment filed within 28 days of the judgment.  *See* Fed. R. Civ. P. 59(e).  Rule 59 further provides that after a bench trial "the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct entry of a new judgment."  *See* Fed. R. Civ. P. 59(a)(2).  Plaintiffs argue that the Court should apportion them larger shares from the common-benefit attorney fee award to the group that included the parties; thus, plaintiffs essentially seek reconsideration of the Court's declaratory judgment on the counterclaim.  Plaintiffs caption their motion as a motion to alter or amend or alternatively for a new trial.  Plaintiffs have not asserted that any trial error warrants a new trial; nor have plaintiffs suggested that any additional evidence should be submitted.  Accordingly, there is no basis for a new trial on the counterclaim, and the Court denies the motion to the extent that plaintiffs seek such relief.

"Rule 59(e) motions may be granted when the court has misapprehended the facts, a party's position, or the controlling law." *See Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (citation and internal quotations omitted). "Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation and internal quotation omitted), *quoted in Nelson*, 921 F.3d at 929.

Plaintiffs have not attempted to apply these standards. Nor have plaintiffs shown that the Court has misapprehended the facts, their position, or the controlling law. Rather, plaintiffs simply argue for a different outcome on the counterclaim. Plaintiffs' arguments either were raised or could have been raised at trial, however. Thus there is no basis for the Court's reconsideration of its prior determination, which it reaffirms here.

The primary thrust of plaintiffs' present arguments is that the total fee award to the group should be split between HGD and them on an 80/20 percentage basis. This is a new argument that was not asserted at trial. Indeed, after rejecting plaintiffs' argument for equal one-third shares of the remainder of the fee award to the parties' group, the Court noted in its findings and conclusions that plaintiffs had not "suggested or argued in favor of allocations in specific amounts (other than their argument for equal one-third shares) or otherwise attempted to value their common-benefit contributions." *See Crumley Roberts*,

3

2023 WL 8529139, at *15.[1]  That may well have been a strategic choice not to provide the Court with an alternative to their argument for equal one-third shares.  That failure to suggest a valuation, however – despite the likelihood that the Court would seek to value plaintiffs' contributions to the benefit of the settlement class in accordance with its prior guidelines for fee award allocations from the common-benefit pools – quite reasonably led the Court first to consider HGD own's proposed division.  At any rate, plaintiffs had ample opportunity at trial to attempt to value their relative contributions to the benefit of the settlement class or to propose specific amounts that they should receive, and they may not do so for the first time by posttrial motion.

The Court also addresses specific arguments from plaintiffs' briefs – although those arguments are occasionally inconsistent from one brief to the next, or improperly raised for the first time in the reply brief.  For instance, on the one hand, plaintiffs suggest that the Court should not have felt constrained to make its division on the same basis used by the Illinois court to allocate among groups the award to the Illinois common-benefit pool; on the other hand, plaintiffs argue that the Court should have acted more like the Illinois court by determining their shares by percentage of the pool.  Neither criticism is justified, however.  Because these fees from the Illinois common-benefit pool were intended to represent fees for work that contributed to the settlement of the litigation and thus

---

[1] Not only did plaintiffs fail to make any such argument at trial, but in addressing the counterclaim in their proposed findings and conclusions, plaintiffs argued only for equal one-third shares, without any other suggested division or valuation of their contributions to the benefit of the settlement class.

benefitted the entire settlement class, the Court quite reasonably chose to determine allocations to plaintiffs under the same guidelines that governed the prior allocations from that pool. Plaintiffs have not explained how – or provided authority to suggest that – the Court was not permitted to do so in making that equitable determination. Moreover, the Court did ultimately reject a lodestar-based approach in favor of the preferred percentage-of-the-fund approach, determining that plaintiffs should receive approximately 1.67 percent and 0.25 percent of the pool respectively. *See id.* at \*16. It rounded those amounts to $1,300,000 and $200,000 respectively because those were Mr. Garrison's valuations at the time of the award – which allowed the Court to give weight to the only evidence presented at trial of any party's contemporaneous valuation. *See id.* The Court stands behind these conclusions, which fall within its discretion in awarding attorney fees.

Plaintiffs also appear to complain that the Court merely determined their contributions instead of comparing their contributions to the HGD group award with those of HGD. Plaintiffs insist in this way that their contributions to the group award should be determined instead of their contributions to the settlement class generally because the award to the group exceeds the sum of the parts, that is, the contributions of plaintiffs and the other groups members valued separately. The Court does not agree, however, that it was required to employ such an approach. The Court intended for the Illinois court, in allocating fees to a particular group, to value the contributions of all members of that group, just as if each member had applied separately (and it interprets the Illinois court's order as doing just that); thus, in deciding the counterclaim, the Court evaluated plaintiffs'

5

contributions to the settlement and the settlement class, and its determination would not change whether it considered those contributions as made by separate applicants or as members of a group applicant. The Court does *not* agree with plaintiffs that it should necessarily determine their contributions to the *group award*; rather, the Court's intent was that plaintiffs receive common-benefit fees only as warranted by their contributions to the overall settlement.

Moreover, the Court is not persuaded that it failed to value plaintiffs' contributions to the settlement and settlement class properly. In their motion, plaintiffs rely on lodestar figures from their supplements to the group fee application, even as they argue in their reply brief for a percentage-based approach over a lodestar-based one. The evidence at trial, however, demonstrated that those figures from the application were not necessarily reliable. Plaintiffs suggest that their primary contribution was to free up HGD to perform the more traditional common-benefit work. As the Court made clear in its common-benefit guidelines, however, such work was not necessarily considered proper common-benefit work for purposes of an award from the pools, and if it was (such as with the completion of a large number of plaintiff fact sheets), it was to be compensated at a lesser rate. *See id.* at \*13 (setting out guidelines). In its findings and conclusions, the Court specifically addressed and rejected plaintiffs' argument that HGD could not have performed its common-benefit work without plaintiffs' efforts. *See id.* at \*14. It further concluded that plaintiffs' work generally did not constitute common-benefit work for the purpose of an allocation of fees from the common-benefit pool. *See id.* at 15. Plaintiffs take issue with

6

the Court's interpretation of the basis for the Illinois court's allocation to the HGD group, but it is clear that the work cited by that court was almost entirely undertaken by HGD. There was evidence at trial to support those conclusions by the Court, and plaintiffs have not argued otherwise.

In summary, plaintiffs have not cited a proper basis for the Court's reconsideration of its prior determination of the proper allocation to plaintiffs; nor have plaintiffs persuaded the Court that its determination did not represent the most appropriate allocation or should otherwise be altered. Accordingly, the Court denies plaintiffs' motion with respect to this issue.

## II.  **Prejudgment Interest**

Plaintiffs also ask the Court to amend the judgment to add prejudgment interest on the amounts that the Court determined they should receive. Plaintiffs seek such interest under Alabama law. The Court did not award any such amounts to plaintiffs on their affirmative claims under state law, however. Rather, these amounts represent their proper shares of a common-benefit attorney fee award made by the Court under federal law. *See In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1110-16 (D. Kan. 2018) (Lungstrum, J.) (citing federal authority in awarding one-third of the Syngenta settlement fund as attorney fees), *aff'd*, 61 F.4th 1126 (10th Cir. 2023); *In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 6839380, at *3, 12 (D. Kan. Dec. 31, 2018) (Lungstrum, J.) (citing federal authority in allocating the fee award among IRPA and common-benefit pools),

*aff'd*, 61 F.4th 1126 (10th Cir. 2023); *In re Syngenta Mass Tort Actions*, 2019 WL 3887515 (S.D. Ill. Aug. 19, 2019) (Rosenstengel, J.) (citing federal authority in allocating fees from the Illinois common-benefit pool), *adopted sub nom. In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 6134520 (D. Kan. Nov. 19, 2019) (Lungstrum, J.), *aff'd*, 61 F.4th 1126 (10th Cir. 2023); *see also In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126 (10th Cir. 2023) (Tenth Circuit citing federal authority in affirming fee award, allocations among pools, and allocations within the Illinois common-benefit pool).  Moreover, in this action, the Court determined the appropriate amounts by declaratory judgment issued pursuant to federal law.  *See Crumley Roberts*, 2023 WL 8529139, at *12 (issuing declaratory judgment after consideration of factors under federal law applying the Declaratory Judgment Act).

Federal law governs the issue of the propriety of prejudgment interest on federal claims.  *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000).  "[I]n the federal context, [the Tenth Circuit] has adopted a preference, if not a presumption, for prejudgment interest."  *See id.* at 1236-37 (citations omitted); *see also FDIC v. UMIC, Inc.*, 136 F.3d 1375, 1388 (10th Cir. 1998) ("prejudgment interest normally should be awarded on successful federal claims").

> An award of prejudgment interest under federal law is governed by a two-step analysis.  First, the trial court determines whether prejudgment interest would compensate the injured party or duplicate damages already awarded.  If the award would compensate, the court must still determine whether the equities would preclude the award of prejudgment interest.

8

*See UMIC, Inc.*, 136 F.3d at 1388 (internal quotations and citations omitted).  Finally, if prejudgment interest is awarded, in the absence of an applicable federal statute the rate imposed is left to the trial court's discretion.  *See Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1042 n.4 (10th Cir. 1990).  This Court has followed the consistent practice of courts in this district of applying the federal postjudgment rate set by 28 U.S.C. § 1961 in awarding prejudgment interest on federal claims.  *See Marten Transport, Ltd. v. Plattform Advertising, Inc.*, 2016 WL 4000927, at *19 (D. Kan. July 26, 2016) (Lungstrum, J.).[2]

In this case, prejudgment interest to plaintiffs would not be duplicative of fee awards to plaintiffs, and thus interest would serve to compensate plaintiffs for the lost time value of the money.  The Court therefore must determine whether equities preclude an award of interest here.  The parties have not addressed the applicable standard under federal law, however, and thus they have not addressed this precise question.  Therefore, the Court requests supplemental briefs in which the parties address this issue concerning the equities of an award of prejudgment interest in this case.  Such briefs shall be filed on or before **February 16, 2024**, and shall be limited to five (5) double-spaced pages (excluding the signature block and certificate of service).

---

[2] Section 1961 provides for postjudgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [the applicable date]," compounded annually.  *See* 28 U.S.C. § 1961(a), (b).  Plaintiffs seek interest running from January 14, 2021, when HGD received the fee award to be distributed among the parties, as set forth in an HGD ledger (Exhibit 60 at trial).  Thus, the applicable rate would appear to be 0.1 percent (0.001).

The parties' briefs should at least address the following two factual issues. First, HGD states in its brief that the exact amounts determined by the Court were offered to and refused by plaintiffs prior to the filing of the case. Lew Garrison testified to that effect at trial, although no other evidence was submitted concerning those offers. The parties should provide facts (with supporting evidence, in the absence of a stipulation) concerning precisely how and when those offers were made and rejected. Second, plaintiffs argue that HGD should pay interest even if the relevant amounts were kept in an IOLTA account from which interest is paid to some agency. Thus, the parties should state facts (or provide evidence or a stipulation) concerning whether HGD has kept any particular amounts concededly owed to plaintiffs in a particular account, whether interest was earned on that money, and if so, the amount of interest and to whom that interest was paid. The parties are directed to confer in an attempt to stipulate to any of these facts.

Accordingly, the Court retains this portion of plaintiffs' motion under advisement.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion to alter or amend the judgment (Doc. # 136) is hereby **denied in part and retained under advisement in part**. The motion is denied with respect to plaintiffs' request that the Court change its determination on the counterclaim with respect to the amounts plaintiffs should receive from the subject fee award. The motion remains pending with respect to the issue of prejudgment interest.

IT IS FURTHER ORDERED BY THE COURT THAT the parties may submit supplemental briefs as directed herein on or before **February 16, 2024**.

IT IS SO ORDERED.

Dated this 1st day of February, 2024, in Kansas City, Kansas.

 /s/  John W. Lungstrum  
Hon. John W. Lungstrum  
United States District Judge
